UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Aljuan C. Hixon,                                  Case No. 06-Civil-1548

                    Mr. Hixon,

          vs.                                     **MEMORANDUM OF LAW
                                                  IN SUPPORT OF
City of Golden Valley, Dennis Arons,             MOTION IN LIMINE TO EXLUDE
Mario Hernandez, David Kuhnly, and               EXPERT TESTIMONY**
Christine McCarville,

                    Defendants.

## INTRODUCTION

Defendants move this Court to preclude Mr. Hixon from submitting any type of expert testimony because Mr. Hixon failed to comply with Federal Rule of Civil Procedure 26(a)(2)(B).  Under the Court's June 6, 2006 Pretrial Scheduling Order, Mr. Hixon was required to disclose his experts on or before November 15, 2006.  Mr. Hixon did not comply with this deadline.  Therefore, Mr. Hixon should be precluded from introducing any type of expert testimony at trial.

## ARGUMENT

### I.   MR. HIXON SHOULD BE PRECLUDED FROM INTRODUCING ANY EXPERT TESTIMONY THROUGH TREATING DOCTORS.

Under Federal Rule of Civil Procedure 26(a)(2)(B), a party who seeks to introduce an expert's opinion into evidence must provide a written disclosure report to the other party that "contain[s] a complete statement of all opinions to be expressed and the basis and reasons therefore; the data or other information considered by the witness in forming

the opinions; any exhibits to be used as a summary or support for the opinions; the

qualifications of the witness; including a list of all publications authored by the witness

within the preceding ten years; the compensation to be paid for the study and testimony;

and a listing of any other cases in which the witness has testified as an expert at trial or

by deposition within the preceding four years." *Id.* "The purpose of a detailed and

complete expert report as contemplated by Rule 26(a) … is, in part, to minimize the

expense of deposing experts, and to shorten direct examination and prevent an ambush at

trial." *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de P.R.*, 248

F. 3d 29, 35 (1st Cir. 2001).

A party that fails to disclose evidence required by Rule 26(a) will not be allowed

to use that evidence unless the failure to disclose the evidence is harmless.  *See* Fed. R.

Civ. P. 37(c)(1).  In determining whether the evidence is harmless, the Court should

consider the following factors: "(1) the prejudice or surprise to the party against whom

the testimony is offered; (2) the ability of the party to cure the prejudice; (3) the extent to

which introducing such testimony would disrupt the trial; and (4) the moving party's bad

faith or willfulness." *Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 728 (7th Cir. 1999); *see

also Engleson v. Little Falls Area Chamber of Commerce*, 210 F.R.D. 667, 669 (D. Minn.

2002).

Here, Mr. Hixon failed to disclose any medical experts.  Mr. Hixon's failure to

comply with Rule 26(a) warrants the preclusion of all expert testimony.  *See O'Conner v.

Commonwealth Edison Co.*, 13 F.3d 1090, 1105 n. 14 (7th Cir. 1994) (noting that treating

physicians are not exempt from the requirements of Federal Rules of Evidence 702 and

703 because "we do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation"); *Zarecki v. Nat'l R.R. Passenger Corp.*, 914 F. Supp. 1566, 1573 (N.D. Ill. 1996) (treating physician who provides expert testimony required to provide a report); *Wreath v. United States*, 161 F.R.D. 448, 449-50 (D. Kan. 1995) (same); *McCloughan v. City of Springfield*, 208 F.R.D. 236, 240-42 (C.D. Ill 2002) (same).

Dr. Shiriff testified in his deposition:

> Q.        Now, as it relates to the questions I'm gong to ask you about Mr. Hixon, do you agree to answer my questions as his treating physician regarding your diagnoses, causation and the impact the incident in this case has had on Mr. Hixon to a reasonable degree of medical certainty?
> A.        Yes.

*Aff. Tindal, Ex. 1*, p. 28.  It is apparent from this testimony, Mr. Hixon intends to use Dr. Shiriff as an expert although he was not disclosed as an expert pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and the Court's Pretrial Scheduling Order.  Mr. Hixon intends to use all his treating doctors as experts in this case.  He is using this testimony in violation of the rules and Court's Order.  The failure to comply with the Rules of Civil Procedure and Court's Pretrial Scheduling Order greatly prejudices Defendants' defense of this case because any testimony would be a complete surprise as Mr. Hixon's treating doctors have provided no expert report.  Defendants hired Dr. Cris Johnston to evaluate Mr. Hixon, but choose not to disclose Dr. Johnston as an expert.  Mr. Hixon disclosed no medical expert but is now trying to circumvent the rules and use Mr. Hixon's treating doctors as experts.  In fact, Mr. Hixon is trying to use Dr. Johnston's report.  Dr.

Johnston's report was introduced during Dr. Shiriff's deposition as Exhibit 37. *Aff. Tindal, Ex. 1,* p. 22. It is greatly prejudicial for Mr. Hixon to use Dr. Johnston's report and records when no expert or report has been disclosed by Mr. Hixon. Dr. Shiriff testified Dr. Johnston's records were supplied to him by Mr. Hixon's attorney. He also testified that in his initial diagnosis of Mr. Hixon, he did not have Dr. Johnston's records. (Dr. Shiriff's diagnosis report is dated August 22, 2006, Dr. Johnston's report is dated December 20, 2006. Therefore, Mr. Hixon's failure to comply with Rule 26(a)(1)(B) and the Court's Pretrial Scheduling Order warrants the preclusion of all expert testimony and use of Dr. Johnston's report and records because it is highly prejudicial to Defendants..

In the event the Court allows Mr. Hixon to introduce expert testimony, the Court should limit the scope of any such testimony. It is anticipated Mr. Hixon will call Dr. Shiriff, Ginny Jacobs, Rita McKee and Dr. Wilson[1]. As a treating psychiatrist and counselor, nurse practitioner and doctor, they cannot testify regarding causation of Mr. Hixon's injuries. "A treating physician's expert opinion on causation is subject to the same standards of scientific reliability that govern the expert opinions of physicians hired solely for purposes of litigation." *Turner v. Iowa Fire Equip. Co.,* 229 F. 3d 1202, 1207 (8th Cir. 2000). Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony. *Lauzon v. Senco Prods., Inc.,* 270 F.3d 681, 686 (8th Cir. 2001). Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or

---

[1] These individuals are referred to in general as "treating doctors" throughout this memorandum.

education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. The proponent of the proposed expert testimony bears the burden of demonstrating by a preponderance of the evidence that the testimony is admissible. *See Lauzon,* 270 F.3d at 686. In *Daubert v. Merrell Dow Pharms.,* 509 U.S. 579 (1993), the Supreme Court held that Rule 702 imposes a gatekeeping responsibility upon the district court to ensure that an expert's testimony is both relevant and reliable.

Daubert provides a number of nonexclusive factors a court can apply in performing this role: (1) whether the theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) whether the theory has been generally accepted. Daubert's progeny provides additional factors such as: whether the expertise was developed for litigation or naturally flowed from the expert's research; whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected proposed testimony with the facts of the case.

*Maras v. Avis Rent A Car Sys.,* 393 F. Supp. 2d 801, 806 (D. Minn. 2005) (citations omitted). "When it comes to admission of expert testimony under the Federal Rules of Evidence, a trial judge has a gatekeeping responsibility to ensure that an expert's testimony rests on a realiable foundation and is relevant to the task at hand." *Medalen v. Tiger Drylac U.S.A., Inc.,* 269 F. Supp. 2d 1118, 1127 (D. Minn. 2003). "Both the Eighth Circuit Court of Appeals and the Supreme Court have made clear that a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that expertise, or that are not found on a reliable methodology." *Id.* (citations omitted). "The personal opinion of an expert witness, no matter how impressive his or

her credentials may be, is inadmissible under Fed. R. Evid. 702." *Group Health Plan,*

*Inc. v. Phillip Morris Inc.,* 188 F. Supp. 2d 112, 1131 (D. Minn. 2002).

In upholding the exclusion of a treating doctor's opinion, the Eighth Circuit in

*Turner v. Iowa Fire Equip. Co.,* 229 F.3d 1202 (8th Cir. 2000) stated:

> Unlike his diagnosis of condition, Dr. Hof's causation opinion was not based upon a methodology that had been tested, subjected to peer review, and generally accepted in the medical community. Significantly, Dr. Hof did not systematically rule out all other possible causes.  He was clearly more concerned with identifying and treating Delores's condition than he was with identifying the specific substance that caused her condition.

*Id.* at 1208.  Similarly, in *Medalen v. Tiger Drylac U.S.A., Inc.,* 269 F. Supp. 2d 1118 (D.

Minn. 2003), the court excluded expert testimony because in his role as the Mr. Hixon's

treating physician, he was appropriately concerned with the treatment of the Mr. Hixon's

condition, and not with the investigation of its cause.  *Id.* at 1237.

A.     **Mr. Hixon's Treating Doctors Should be Precluded From Testifying as to the Causation of Mr. Hixon's Alleged Injuries.**

Similar to *Turner* and *Medalen,* Mr. Hixon's treating doctors' concern was

treatment of Mr. Hixon, and not with investigating the cause.

Dr. Shiriff testified his causation opinion was to assist him in his treatment of Mr.

Hixon.  *Aff. Tindal, Ex. 1,* p. 40.  Dr. Shiriff testified:

> Q.          Can you describe whether understanding the cause of someone's PTSD assists in your treatment of that person?

> Mr. Iverson:  Objection, lack of disclosure.

> A.          Yes.

Q.           Therefore, did you attempt to assess and determine what the cause of Mr. Hixon's PTSD was?

A.           Yes.

*Id.* p. 40.  There is no testimony his opinion on the causation of Mr. Hixon's injuries was based upon a methodology that had been tested, subjected to peer review, and generally accepted in the medical community.  Dr. Shiriff did not rule out other possible causes of Mr. Hixon's PTSD and depression but relied on Mr. Hixon's perception of the April 2005 incident.  *Id.* p. 51.  Dr. Shiriff testified that the perception of an incident may not necessarily be the way that it occurred.  *Id.* p. 66.

Q.           Perception may not be a reality in terms of their psychiatric treatment; is that a fair statement?

A.           Well, that's a tough question.  In some sense, a patient's perception of their reality is all that's important.  It's what they're experiencing at that time.  Whether it's a realistic perception as others would see it or not is another, you know questions.  But for a trauma victim, the trauma is within them.  So it's their experience of what occurred.

Q.           It doesn't mean what occurred was wrong, it's just their experience of it impacted them?

A.           True.

Q.           In this case when Mr. Hixon reports to you that he almost lost his life, and you've got that in quotes in your report, you don't have any idea whether that actually, in fact, occurred; do you?

A.           No.

Q.           That's simply what Mr. Hixon reported to you?

A.           That's what he reported.

Q.          The history that was provided to you is the history that the patient provides to you; correct?

A.          Yes.

Q.          You did not do any independent testing of Mr. Hixon?

A.          No.

*Aff. Tindal, Ex. 1,* pp. 66-67.

Clearly from Dr. Shiriff's testimony his opinion on the causation of Mr. Hixon's PTSD and depression was based on Mr. Hixon's perception of the April 2005 incident with Golden Valley Police Officers.   Dr. Shiriff's opinion on causation and PTSD and depression was not based on a testing or a methodology that had been subject to peer review.  While treating Mr. Hixon, Dr. Shiriff did not rule out other causes of Mr. Hixon's PTSD or depression.  Therefore, Dr. Shiriff should not be allowed to testify as an expert.

Allowing Mr. Hixon's treating doctors to testify as to causation of his injuries would greatly prejudice Defendants at this stage of proceedings.  Therefore, all treating doctors should be excluded from testifying as to their opinion on the causation of Mr. Hixon's injuries.

**B.     Mr. Hixon Should Not be Allowed to Use Dr. Shiriff's Deposition Transcript at Trial.**

Dr. Shiriff was not disclosed as an expert under Fed. R. Civ. P. 26(a)(2)(A).  The Court's June 6, 2006, Pretrial Scheduling Order provides the deadline for Mr. Hixon to disclose expert reports was November 15, 2006.  No expert or report was disclosed.  The

Order also required all discovery including expert depositions be completed by March 1, 2007. The Court's July 2, 2007, Order regarding the schedule for submission of trial materials does not allow trial depositions but requires designation and copies of proposed deposition testimony to be filed by August 17, 2007. In addition, the Trial Order does not extend any deadlines in the Pretrial Scheduling Order. Dr. Shiriff's deposition was taken on August 7, 2007, and is untimely because his deposition should have been taken prior to March 1, 2007. Dr. Shiriff admitted in his deposition he provided no expert report. *Ex. 1,* p. 12-13. He also testified he did no diagnostic testing such as an MMPI. *Id* p. 13.

Furthermore, Federal Rules of Civil Procedure 32(a)(3) only allows the use of deposition transcripts for limited purposes. Dr. Shiriff does not satisfy any of the criteria (such as being dead, a greater distance than 100 miles or ill).

Accordingly, Mr. Hixon should be precluded from using Dr. Shiriff's deposition transcript at trial. Additionally, Mr. Hixon should reimburse defense counsel for their time at the deposition and the cost of procuring the transcript.

## II.   MR. HIXON SHOULD BE PRECLUDED FROM INTRODUCING ANY EXPERT TESTIMONY OF ANTHONY BOUZA.

The Court's June 6, 2006, Pretrial Scheduling Order provides the deadline for Mr. Hixon to disclose expert reports was November 15, 2006. No expert or report was disclosed. The Pretrial Scheduling Order required Defendants to disclose experts by January 5, 2007. Defendants disclosed police expert Chief Scott Bechthold. The Pretrial

Scheduling Order allowed Mr. Hixon to disclose a rebuttal expert report by February 1, 2007.  On February 1, 2007, Mr. Hixon disclosed Anthony Bouza's report.

Defendants object to Anthony Bouza testifying in this case as he was not disclosed by the November 15, 2006, deadline.  In the alternative, because Anthony Bouza is a "rebuttal" expert, he should be precluded from testifying in Mr. Hixon's case-in-chief.

## <u>CONCLUSION</u>

For the above-mentioned reasons, Defendants respectfully request the court grant their Motion in Limine and exclude all of Mr. Hixon's expert testimony.

IVERSON REUVERS

Dated:  August 17, 2007.                    By:  <u>s/Susan M. Tindal</u>
                                                  Jon K. Iverson (#146389)
                                                  Susan M. Tindal (#330875)
                                             Attorneys for Defendants
                                             9321 Ensign Avenue South
                                             Bloomington, MN  55438
                                             (952) 548-7200