UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

─────────────────────────────────────────────────────

Aljuan C. Hixon,                           Case No. 06-Civil 1548 (RHK/JSM)

        Plaintiff,

    v.                                 **PLAINTIFF'S MEMORANDUM OF LAW
                                           IN RESPONSE TO DEFENDANTS'**
City of Golden Valley,                     **MOTION IN LIMINE TO EXCLUDE**
Dennis Arons,                              **EXPERT TESTIMONY**
Mario Hernandez,
David Kuhnly, and
Christine McCarville,

        Defendants.

─────────────────────────────────────────────────────

## I.    <u>INTRODUCTION</u>

On August 17, 2007, Defendants filed a Motion in Limine and supporting Memorandum of Law to exclude Plaintiff Al Hixon from submitting "any type of expert testimony at trial," including testimony by Mr. Hixon's treating physicians.[1] Defendants couch their motion in terms of attempting to exclude "expert" testimony. This characterization is misplaced. Plaintiff's treating physicians are not specially retained experts for this litigation subject to Rule 26(a)(2)(B) requirements. Nor were they understood to be subject to expert disclosure provisions contained in this Court's June 6, 2006 Pre-trial Scheduling Order. The treating physicians are not specially retained experts and will not testify as such. Nonetheless, Plaintiff provided full disclosure of

────────────

[1] The term "treating physicians" is used throughout this memorandum to refer to both Dr. John R. Shirriff, a medical doctor and licensed psychiatrist, and to Ginny Jacobs, a licensed psychologist and licensed Marriage and Family counselor, who are both employed at BHSI (Behavioral Health Services clinic) in Golden Valley, Minnesota.

medical records and treating physician witnesses months ago.  Defendants' allegations of "surprise" and/or prejudice are unsubstantiated and flat out overstated.

Defendants have known since early in this case that Plaintiff had suffered psychological injuries and was being treated by these and other mental health professionals.  Indeed, Defendants demanded and received an independent psychological evaluation nine months ago, in December 2006.  This Motion is driven in large part undoubtedly by the fact that Defendants' hand-picked expert concurred with the diagnosis of chronic PTSD resulting from the April 12, 2005, incident with Defendants.

Defendants next try to limit the Plaintiff's treating physician from testifying about causation.  First, prevailing caselaw is against Defendants' argument.  Second, with respect to cases involving PTSD, decisions do not exist in this jurisdiction supporting Defendants' contention.  The fact that this case involves PTSD is significant on this issue.  Defendants' fail to acknowledge that in the case of PTSD causation is an essential part of the diagnosis and treatment.  They cannot be separated.  Unlike many injuries in which the cause is either irrelevant to treatment or merely secondary to treatment, with PTSD there can be no diagnosis without it.

In any event, Plaintiff's treating physicians' testimony on causation meet the standards of *Daubert*.

Finally, Defendants' arguments to exclude the expert testimony on liability of Anthony Bouza is equally misplaced and he should be allowed to testify at the appropriate time during trial.

## II.     ARGUMENT

### A.     TREATING PHYSICIANS – DR. JOHN SHIRRIFF AND MS. GINNY JACOBS

#### 1.     Neither Rule 26(a)(2)(B) Nor This Court's June 6, 2006 Scheduling Order Precludes Nor Limits the Testimony of Plaintiff's Treating Physicians.

##### a.     The Rule or Order does not apply to testimony of treating physicians.

Federal Rule of Civil Procedure 26(a)(2)(B) requires that a written report be disclosed for "a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony . . ." Fed.R.Civ.P. 26(a)(2)(B).  The Pre-trial Scheduling Order of this Court made no specific requirements about treating physicians, and did not indicate or imply that treating physicians would be treated as "experts" and must be disclosed by the stated deadline or be lost.  See Vecchio v. Schaefer, No. 05-3194-CV-S-FJG, 2007 WL 1813578, *3 (W.D.Mo. June 22, 2007) (court's scheduling order specifically discusses treating physicians).

In this case, Defendants provide no evidence, nor can they, that Dr. Shirriff or Ms. Jacobs were retained to provide "expert" testimony in this litigation.  Mr. Hixon sought treatment from Dr. Shirriff and Ms. Jacobs on his own initiative, and at the urging of his wife because of the extreme emotional symptoms Mr. Hixon was continuing to experience following the incident that occurred on April 2, 2005.  (See Shirriff Affidavit ("Aff."), ¶ 6; Jacobs Aff., ¶ 6.)  In fact, the undersigned attorneys in this case did not

learn that Mr. Hixon had even sought treatment from Dr. Shirriff and Ms. Jacobs until over four months later during Mr. Hixon's deposition on December 18, 2006. Ms. Jacobs diagnosed Mr. Hixon with PTSD during her initial session with Mr. Hixon on August 7, 2006, and recommended treatment at that time. (See Jacobs Aff., ¶¶ 8, 9; Aff. of Anthony Edwards ("Edwards"), Ex. 1, Deposition of Dr. John Shirriff ("Shirriff Depo."), Ex. 36.) Dr. Shirriff diagnosed Mr. Hixon with PTSD and depression during his initial session with Mr. Hixon on August 22, 2006, and recommended treatment at that time. (See Shirriff Aff., ¶¶ 10, 12; Edwards Aff., Ex. 1, pp. 13, 39; Shirriff Depo. Ex. 36.) Clearly Dr. Shirriff's and Ms. Jacobs's diagnoses and treatment were made independent of litigation, and their testimony is not a result of being retained or specially employed to provide expert testimony in this case. The treating physicians are fact witnesses providing testimony as to their specific personal care and treatment of Mr. Hixon.

Rule 26(a)(2)(B) does not serve to exclude testimony of treating physicians. The 1993 Advisory Committee expressly notes that treating physicians may be deposed or called to testify without providing a written report described in Rule 26(a)(2)(B). 1993 cmte. cmt. ("A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.") The information to be included in a Rule 26(a)(2)(B), such as the amount of compensation and identification of other cases in which they have testified, is information typically required of specially retained expert witnesses, not physicians, an indication of the different treatment for persons subject to Rule 26(a)(2)(B). See Wreath v. United States, 161 F.R.D. 448, 449 (D. Kan. 1995).

Caselaw in the Eighth Circuit, as well as elsewhere, also supports this conclusion. See, e.g., Mackey v. Burlington Northern Santa FE Ry. Co., No. 05-4133-SAC, 2006 WL 3512958 (D.Kan. Nov. 29, 2006) ("The expert report requirement in Fed.R.Civ.P. 26(a)(2)(B) applies only to witnesses 'retained or specially employed to provide expert testimony on the case;'" the requirement does not apply to treating physicians who provide testimony regarding opinions based on their personal care and treatment of the patient); Navrude v. United States Postal Serv., No. C01-4039-PAZ, 2003 WL 356091 (N.D. Iowa Feb. 11, 2003) ("Courts draw a distinction between 'hired guns' who examine a patient or a patient's records for purposes of litigation, and treating physicians whose opinion testimony is based upon their personal knowledge of the treatment of the information;" thus plaintiff's treating physician is not subject to Fed.R.Civ.P. 26(a)(2)(B) report requirement); Smith v. Nebraska Dept. of Corr. Serv., No. 8:99CV131, 2002 WL 1163735, *2 (D. Neb. June 4, 2002) ("Rule 26(a)(2) . . . excludes treating physicians from the expert disclosure requirements. . . .  As an expert who has not been retained for purposes of litigation, a treating physician may testify to events and opinions arising directly through her treatment of the patient"); Wreath v. United States, 161 F.R.D. 448, 449 (D. Kan. 1995) ("Clearly, treating physicians testifying only to the care and treatment afforded to a party were intended to be excluded from the requirements of Fed.R.Civ.P. 26(a)(2)(B)"); see also Kitts v. Gen. Telephone North, Inc., No. 2:04-CV-173, 2005 WL 2277438 (S.D. Ohio Sept. 19, 2005) (no Rule 26(a)(2)(B) report required for a treating physician who offer opinion testimony based on facts learned during treatment of the patient and familiarity with the specific nature of the patient's condition); Rogers v.

Detroit Edison Co., 328 F.Supp.2d 687, 689 (E.D. Mich. 2004) (a majority of courts hold that a Rule 26(a)(2)(B) report is not required from a treating physician testifying to matters learned in the scope of treatment); McCloughan v. City of Springfield, 208 F.R.D. 236, 241 (C.D. Ill. 2002) ("[treating] physician does not need to submit an expert report if planned testimony was acquired, not in preparation for trial, but rather as an actor . . . to transactions or occurrences that are a part of the subject matter of the lawsuit") (citations omitted); Zurba v. United States, 202 F.R.D. 590, 591 (N.D. Ill. 2001) ("A treating physician is not considered a retained expert for purposes of Rule 26(a)(2), and thus need not submit a report if his testimony is based on observations made during the course of treatment, the testimony was not acquired or developed in anticipation of litigation or for trial, and the testimony is based on personal knowledge") (citations omitted); Riddick v. Washington Hosp. Ctr., 183 F.R.D. 327, 330 (D.D.C. 1998) ("As a treating physician, Dr. Mines may describe  what she has seen, describe and explain her diagnosis and the treatment she prescribed, and offer here opinions and expert inferences therefrom – all without running afoul of the constraints of Rules 26 and 37 of the Federal Rules of Civil Procedure").

The cases Defendants cite in support of their position that a Rule 26(a)(2)(B) report is required before Plaintiff's treating physicians may testify at all in this case are not on point.  The cases Defendants cite stand for the proposition that a treating physician may be subject to the Rule 26(a)(2)(B) requirement of a written report **if** the treating physician is called to testify as an expert with an opinion that is not based on his/her treatment and care of the patient.  See McCloughan, 208 F.R.D. at 242 (finding treating

physicians may offer opinion testimony on causation, diagnosis, and prognosis without providing a Rule 26(a)(2)(B) report).   As McClouhan noted, "the Seventh Circuit's footnote in O'Conner merely stands for the proposition that if a treating physician is going to give expert testimony, he must satisfy Rule 702's requirements. . . .   The Seventh Circuit did not make any reference therein to Rule 26 or its requirements."   Id. (emphasis added).  This is simply not the case here.

Plaintiff has been unable to locate any Eighth Circuit published or unpublished opinion, appellate or district court decisions, where the court has excluded a treating physician's testimony about PTSD on the issue of causation or otherwise.  Defendants' motion is not supported by the law.

### b.  Defendants' Claim of "Complete Surprise" is Disingenuous And Does Not Preclude Testimony By Plaintiff's Treating Physicians.

Defendants assert they will be greatly prejudiced if Plaintiff's treating physicians testify "because any testimony would be a complete surprise . . ."   Defendants' Memorandum of Law in Support of Motion in Limine to Exclude Expert Testimony ("Def. Mem.") at 3.  This is not correct.

Defendants had all the existing medical records of Mr. Hixon over six months before trial, including the medical records of Dr. Shirriff and Ms. Jacobs identifying Mr. Hixon with PTSD and identifying the traumatic triggering event required for a PTSD diagnosis as the April 2, 2005 incident.[2]  (See Edwards Aff.,  ¶ 3.)  Mr. Hixon formally disclosed to Defendants that he was receiving treatment from BHSI, the employer of both

---

[2] Medical records have been timely supplemented since that time.  (See Edwards Aff., ¶ 3.)

Dr. Shirriff and Ms. Jacobs in written correspondence on January 24, 2007 and provided signed authorizations to Defendants so they could obtain Mr. Hixon's medical records.[3] (See Edwards Aff., ¶ 4.)   Defendants had known of the treatment weeks earlier, on December 18, 2006, when Mr. Hixon testified about the treatment and identified his doctors.   In addition, Mr. Hixon provided Defendants with a complete copy of all BHSI medical records available to that date on February 20, 2007, and timely supplemented them.   (See Edwards Aff., ¶¶ 3-4.)   The BHSI medical records clearly show both Dr. Shirriff and Ms. Jacobs had diagnosed Mr. Hixon as suffering from PTSD and depression.   (See Edwards Aff., Ex. 1, Shirriff Depo., Ex. 36.)   The records also identified the traumatic triggering event <u>that is a necessary part of a PTSD diagnosis</u>, as an incident that occurred to Mr. Hixon on April 2, 2005 involving Golden Valley police officers.   (See Edwards Aff., Ex. 1, Shirriff Depo., Ex. 36.)   The records further describe Mr. Hixon's symptoms, including anxiety, paranoia, agoraphobia, fear that he had almost lost his life, trouble sleeping, trouble with memory, difficulty in speaking, and a flattened affect.   The records also included information on Mr. Hixon's treatment.   Based on this information, Defendants were aware in February 2007 that Mr. Hixon was receiving treatment from Dr. Shirriff and Ms. Jacobs, were aware of his PTSD and depression diagnoses, were aware of his symptoms, and were aware that the triggering event of Mr. Hixon's PTSD was the April 2, 2005 incident.

Defendants were also well aware that Mr. Hixon was suffering from PTSD <u>from their own expert</u>, Dr. Cris Johnston, who provided Defendants with an assessment of Mr.

---

[3] This was before the discovery deadline of March 1, 2007.

Hixon as early as December 19, 2006.  Dr. Johnston's evaluation included a review of Mr. Hixon's medical records, a clinical interview, and results of psychological tests administered by Dr. Johnston.  Dr. Johnston not only diagnosed Mr. Hixon with PTSD, but identified the April 2, 2005 incident with Golden Valley police officers as the triggering traumatic event of Mr. Hixon's PTSD.  (See Edwards Aff., Ex. 1, Shirriff Depo., Ex. 37.)   The fact Defendants even retained Dr. Johnston to conduct a psychological IME evaluation indicates they were not surprised.

Furthermore, Defendants were aware that Mr. Hixon was suffering from PTSD as long ago as November 28, 2006 when Mr. Hixon produced records and authorizations from Mr. Hixon's healthcare providers at Health Partners, including treatment notes of Ms. Karen Kramer, a mental health professional at Health Partners.  Ms. Kramer also diagnosed Mr. Hixon with PTSD and identified the April 2, 2005 incident with Golden Valley police officers as the traumatic event that had occurred, a requirement for a PTSD diagnosis.  (See Edwards Aff., Ex. 1, Shirriff Depo., Ex. 34.)

Finally, Mr. Hixon disclosed Dr. Shirriff and Ms. Jacobs as witnesses in a supplemental Rule 26(a)(1) filing, nearly six months before trial.[4]  (See Edwards Aff., ¶ 5.)

Defendants cannot claim to be "surprised" that Mr. Hixon had been diagnosed with PTSD and depression, cannot claim they were "surprised" that Mr. Hixon was being treated for PTSD and depression by Dr. Shirriff and by Ms. Jacobs at BHSI, cannot claim

_____

[4] Mr. Hixon produced the required proposed witness and exhibit list, including the names of Dr. Shirriff and Ms. Jacobs to Defendants on August 17, 2007, as required by the Court's Order of July 2, 2007.  ¶

to be "surprised" that Dr. Shirriff and Ms. Jacobs are witnesses in this case, nor can they claim they were "surprised" that the traumatic triggering event to Mr. Hixon's PTSD was the incident that occurred on April 2, 2005.  Under the Federal Rules, Defendants were free to serve Mr. Hixon with interrogatories concerning the diagnosis, care and treatment he was receiving from Dr. Shirriff and Ms. Jacobs, but they did not.  Defendants were also free to depose both Dr. Shirriff[5] and Ms. Jacobs and inquire into all relevant aspects of their opinions, treatment and diagnoses, but they did not.  Defendants cannot now claim they did not have a reasonable opportunity to prepare for effective cross-examination.  The fact that Defendants chose not to further inquire about the treating physicians' opinions (persons they know to be witnesses in this case) cannot be used as a basis to deny their testimony claiming unfair surprise.  See McCloughan, 208 F.R.D., at 242.  Defendants' Motion in Limine appears to be the result of Defendants' expert agreeing with all other doctors in this case that Mr. Hixon suffers from chronic PTSD.

### 2.   Plaintiff's Treating Physicians May Testify About Causation of PTSD and Related Depression.

#### a.   Plaintiff's Treating Physicians May Testify As To Causation Without Triggering A Rule 26(a)(2)(B) Report Requirement.

Defendants next seek to limit the treating physicians' testimony as to causation.  (See Def. Mem. at 4.)  This attempt must also be rejected.  Defendants' arguments are inapplicable because they refuse to recognize that in a case involving treating physician

---

[5] Mr. Hixon chose to depose Dr. Shirriff on August 7, 2007 when it appeared it would be necessary to have Dr. Shirriff's testimony at trial come in through deposition.  Mr. Hixon is now able to call Dr. Shirriff as a witness at trial in lieu of using his deposition testimony.

testimony regarding PTSD (and related depression) the triggering traumatic event of the PTSD is a specific criteria or required element of the diagnosis and is central to treatment. (See Shirriff Aff., ¶¶ 3-4, 13; Jacobs Aff. ¶¶ 3-4, 10.) The cause of the PTSD is not ancillary or unimportant to the work of the treating physicians, but rather central and a part of the diagnosis and treatment.

The prevailing view today is that treating physicians, not specially retained, may testify about their opinions as to causation without the requirement of a Rule 26(a)(2)(B) report even in non-PTSD cases. See, e.g., Mackey v. Burlington Northern Santa Fe Ry. Co., No. 05-4133-SAC, 2006 WL 3512958, *2 (D. Kan. Nov. 29, 2006); Martin v. CSX Transp., Inc., 215 F.R.D. 554, 557 (S.D. Ind. 2003); McCloughan, 208 F.R.D. at 242; Zurba, 202 F.R.D. at 592; Starling v. Union Pac. R.R. Co., 203 F.R.D. 468, 479 (D. Kan. 2001); Smith, 2002 WL 1163735, at *3; Sprague v. Liberty Mut. Ins. Co., 177 F.R.D. 78, 81 (D.N.H. 1998); Shapardon v. West Beach Estates, 172 F.R.D. 415, 417 (D. Haw. 1997); Chrisopher W. Dyer, Note, "Treating Physicians: Fact Witnesses or Retained Expert Witnesses In Disguise? 48 Drake L.Rev., 719, 727-31 (2000) ("The majority of federal courts considering the issue of whether treating physicians are subject to reporting requirements when presented to provide opinion testimony on prognosis, causation, or standard of care, have concluded treating physicians are not subject to these requirements, so long as the opinions stem from treatment") (emphasis added).

A treating physician's opinions about the causation of a medical condition, the diagnosis, the prognosis and extent of the disability are all considered part of the ordinary care of a patient. See Smith, 2002 WL 1163735, at *3 (opinions as to causation are part

of the ordinary care of a patient); <u>McCloughan</u>, 208 F.R.D. at 242 (doctors need to know the cause of the injury as part of their treatment); <u>Zurba</u>, 202 F.R.D. at 592 (developing an opinion as to the cause of an injury is a necessary part of treatment; in addition it is common for a treating physician to consider patient's prognosis; such testimony does not trigger the need for an expert report).

As the <u>McCloughan</u> court noted:

> [D]octors do not operate in a vacuum.  In order to properly treat and diagnose a patient, the doctor needs to know, establish, or reach a conclusion regarding the cause of the patient's injury.  Thus the Court believes that causation, diagnosis, and prognosis would be based upon the treating physicians' personal knowledge of [the patient] and his case.

<u>McCloughan</u>, 208 F.R.D. at 242; <u>see also</u> <u>Shapardon</u>, 172 F.R.D. at 416-17  (opinions as to the cause of a medical condition, the diagnosis, prognosis and extent of disability are included in the ordinary care of a patient and do not trigger the need for an expert report).

As long as treating physicians limit their testimony to opinions based on their own personal care and treatment of the patient, including opinion as to the causation, nature and projected duration of the patient's disabilities, no Rule 26(a)(2)(B) report is required. <u>See</u> <u>Mackey</u>, 2006 WL 3512958, at *2; <u>Goeken v. Wal-Mart Stores, Inc.</u>, No. 99-4191-SAC, 2001 WL 1159751 (D.Kan. Aug. 16, 2001) (treating physicians may testify to prognosis and the extent of present and future disability); Vecchio, 2007 WL 1813578, at *3 (scheduling order permits treating physicians to be fact witness with no report required including testimony as the cause of the medical condition, the diagnosis, the prognosis and the extent of the disability caused).

Permitting a treating physician to testify about causation is particularly appropriate when the cause of an injury is necessary for diagnosis and treatment. See Starling, 203 F.R.D. at 479 (permitting treating physicians to testify as to causation of PTSD). Identification of causation is an essential part of the diagnosis and treatment of PTSD. (See Shirriff Aff., ¶13;  Jacobs Aff., ¶10; Edwards Aff., Ex. 1, pp. 32-33.)  PTSD is defined as "an anxiety disorder involving an individual  who has been exposed to, witnessed, or learned about 'an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity' that leads to significant symptoms of distress or impairment in the patient."  (See Jacobs Aff.,  ¶ 3; Shirriff Aff., ¶ 3.)  Patients are not diagnosed with PTSD unless they have been exposed to an extremely traumatic event that involves actual or threatened death or serious injury.  (See Edwards Aff., Ex. 1, pp. 32-33; Shirriff Aff., ¶¶ 3, 13.)  This is a direct overlap with the question of cause.

Unlike the diagnosis required for a patient who presents with a broken bone in their leg and the cause of the injury is likely ancillary, treating physicians who see a patient presenting with PTSD-like symptoms must determine if the patient has experienced the extreme type of traumatic event required for a PTSD diagnosis and must delve into and understand the cause.  Furthermore, unlike treatment for a broken leg, it is important and, in fact, necessary, for a treating physician to understand the cause of a PTSD patient's symptoms in order to develop appropriate treatment.  (See Shirriff Aff., ¶ 13; Jacobs Aff., ¶ 10.)  In the case of Mr. Hixon, for example, part of his therapy included helping him learn coping skills to use when he confronts similar stressors arising from the

traumatic event that caused his PTSD, such as seeing police officers and returning to the gas station where the event occurred.  (See Jacobs Aff., ¶ 10.)

In fact, treating physicians have been allowed to testify about causation in PTSD cases without a Rule 26(a)(2)(B) report.  See Starling, 203 F.R.D. at 479; Rogers, 328 F.Supp. at 690.  Again, to our knowledge, no court in the Eighth Circuit has precluded such evidence.

### b.    Plaintiff's Treating Physicians May Testify as to Causation Under A *Daubert*[6] Analysis.

Defendants assert that Plaintiff's treating physicians may not testify about causation under a *Daubert* analysis because: (1) they were concerned with Mr. Hixon's treatment, not investigating the cause; (2) Dr. Shirrif's opinion on the causation of Mr. Hixon's injuries was not based upon a methodology that had been tested, subjected to peer review, and generally accepted in the medical community; and (3) the treating physicians did not rule out other possible causes of Mr. Hixon's PTSD.  Def. Mem., at 6-8.  They assert that a *Daubert* analysis is required for treating physicians who propose to testify regarding causation.  Def. Mem. at 4-5.  This argument attempts to divert the Court from the proper analysis, discussed *supra*, that treating physicians are not "experts,"  and may testify as fact witnesses including causation testimony in a case such as PTSD.

Based on the reasons and caselaw cited in the preceding section regarding a Rule 26(a)(2)(B) analysis on causation testimony, this Court need not engage in a *Daubert*

---

[6] Daubert v. Merrell Dow Pharm., 509 U.S. 573, 591 (1993).

analysis since the causation testimony in this case regarding PTSD is not "expert" testimony. The opinions of Mr. Hixon's treating physicians that his PTSD was caused by the incident on April 2, 2005 were <u>required</u> for their diagnoses and <u>necessary</u> for their treatment of Mr. Hixon. As such, they are fact witnesses, not experts subject to a *Daubert* analysis. They are not to be converted into "experts" when their opinion on causation is central to the diagnosis, as in PTSD.

This distinction is clear when the facts of the <u>Turner</u> and <u>Medalen</u> cases, cited by Defendants, are examined. In <u>Turner</u>, the court engaged in a *Daubert* analysis in reviewing the exclusion of testimony of plaintiff's treating physician, a pulmonologist whose proposed testimony involved an opinion that baking soda inhaled at plaintiff's worksite caused her reactive airway disorder. <u>See Turner v. Iowa Fire Equip. Co</u>., 229 F.3d 1202 (8th Cir. 2000). It is not an essential element of the diagnosis of reactive airway disorder to identify the cause of the injury. Furthermore, it is likely that a reactive airway disorder could have multiple causes, unlike a traumatic triggering PTSD event. In fact, the pulmonologist in <u>Turner</u> initially identified a different cause and later changed his opinion after learning his original causation conclusion was not possible. <u>Id</u>., at 1208.

In <u>Medalen</u> the treating physician acknowledged that he did little to determine the cause of plaintiff's skin cancer as it was not important to his treatment. <u>See Medalen v. Tiger Drylac U.S.A., Inc</u>., 269 F.Supp. 2d 1118, 1137 (D. Minn. 2003). Furthermore, the treating physician, a plastic surgeon, admitted he did not have expertise in determining the cause of cancer. The court concluded the treating physician was not competent to

testify that plaintiff's exposure to defendants' powder paint products <u>caused</u> her basal cell carcinoma.  <u>Id</u>. at 1137-39.

These cases highlight the significant factual differences with Mr. Hixon's case.  In Mr. Hixon's case, there is no evidence of multiple, or indeed <u>any</u> other cause of Mr. Hixon's PTSD.  Moreover, Mr. Hixon's treating physicians never changed their causation determination, unlike the treating physician in <u>Turner</u>.  Unlike <u>Turner</u> and <u>Medalen</u>, there was only one possible traumatic event that occurred to Mr. Hixon that could have been the cause of his PTSD.  Dr. Shirriff and Ms. Jacobs are well qualified to identify the types of traumatic events that might cause PTSD, and they identified the April 2, 2005 incident as the triggering event, having considered that no other events of such trauma existed nor were fixated on by Mr. Hixon.[7]  (<u>See</u> Shirriff Aff., ¶¶ 1, 2, , 13-15; Jacobs Aff., ¶¶ 1, 2, 10-12.)  In contrast, the treating physicians in <u>Turner</u> and <u>Medalen</u> acknowledged they made no effort to determine whether other factors may have caused or contributed to the disability.  Further, there is no evidence the <u>Turner</u> physician was qualified to identify the cause of a pulmonary disability as a particular chemical agent, or the <u>Medalen</u> physician was qualified to form an opinion about causation of skin cancer.  <u>See</u> <u>Turner</u>, 229 F.3d at 1206; <u>Medalen</u>, 269 F.Supp.2d at  1137.

If this Court should determine that a *Daubert* analysis is required in this case, Plaintiff's treating physicians must still be permitted to testify as to causation.

---

[7] Again, all of this was done as a critical and necessary part of their treatment and wholly unrelated to any litigation.  (<u>See</u> Shirriff Aff., ¶ 6; Jacobs Aff., ¶ 6.)

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  See Fed.R.Evid.702.  Even after *Daubert*, the rule as interpreted by the courts, favors admissibility of expert testimony rather than exclusion, and "reflects an attempt to liberalize the rules governing the admission of expert testimony."  See Lauzon v. Senco Prod., Inc., 270 F.3d 681, 686 (8th Cir. 2001) (quoting Weisgram v. Marley Co., 169 F.3d 514, 523 (8th Cir. 1999) *aff'd*, 528 U.S. 440 (2000)); Starling, 203 F.R.D. at 476 ("Even after Daubert, rejection of expert testimony has been the exception rather than the rule").

Defendants' first assertion that Mr. Hixon's treating physicians were concerned with Mr. Hixon's treatment, not investigating the cause is, quite simply, totally inaccurate.  As discussed *supra*, identifying the cause (a traumatic triggering event) was essential to Dr. Shirriff's and Ms. Jacobs's diagnosis of Mr. Hixon's PTSD.  (See Shirriff Aff., ¶ 13; Jacobs Aff., ¶ 10; Edwards Aff., Ex. 1, pp. 32-33.)  There can be no diagnosis of PTSD without the existence of a defined traumatic triggering event.  (See Shirriff Aff., ¶ 3; Jacobs Aff., ¶ 3.  Identifying the cause of Mr. Hixon's PTSD was also necessary for Mr. Hixon's treatment.  (See Jacobs Aff., ¶ 10.)  Dr. Shirriff and Ms. Jacobs, in fact, were "concerned" about and did investigate the cause of Mr. Hixon's PTSD.

Next, Defendant's question the methodology used by Dr. Shirriff and Ms. Jacobs to determine causation, suggesting their methodology has not been tested, subjected to peer review, or generally accepted in the medical community.  Attacks regarding the completeness of methodology of experts go to the weight, not the admissibility of the testimony.  See Kudabeck v. Kroger Co., 338 F.3d 856, 861 (8th Cir. 2003); Lauzon, 270 F.3d at 694.  It is well established that "vigorous cross-examination" and the introduction

of contrary evidence, not exclusion, are considered the favored methods to use when attacking testimony one side regards as "shaky."[8]   See Kudabeck, 338 F.3d at 862 (quoting Daubert v. Daubert v. Merrell Dow Pharm., 509 U.S. 573 (1993)); Starling, 203 F.R.D. at 862 (same).   Moreover, methodology is considered unreliable only where the defendant points to a plausible alternative cause and the doctor offers no other explanation.   See Kudabeck, 338 F.3d at 862 (quoting Heller v. Shaw Indus., Inc., 167 F.3d 146, 155 (3d Cir. 1999)).   Defendants have not suggested such a plausible alternative cause, nor can they.   This case is akin to a healthy plaintiff getting into a car accident and coming away with a shattered leg.   Alternative cause cannot genuinely be disputed.

Defendants will be free to cross-examine Dr. Shirriff and Ms. Jacobs on the methodologies they used to determine causation.   The fact is no additional testing was available that was relevant to assess the cause of Mr. Hixon's PTSD.   (Shirriff Aff., ¶ 15; Jacobs Aff., ¶ 12.)   Both Dr. Shirriff and Ms. Jacobs state that based on their education, training and experience, the April 2, 2005 incident is the type of traumatic event that can trigger PTSD symptoms.   (See Shirriff Aff., ¶ 13; Jacobs Aff., ¶ 12.)   Dr. Shirriff and Ms. Jacobs based their diagnosis that the April 2, 2005 incident caused the PTSD symptoms in Mr. Hixon on their own extensive professional experience and training, the absence of

---

[8] Defendants cannot use the fact that they did not depose Plaintiff's two treating physicians, even though they were fully notified of them as witnesses and had all medical records to prepare a "vigorous cross-examination," as a basis to claim prejudice. Moreover, Defendants' decision not to use their own expert (who also diagnosed Mr. Hixon with "chronic PTSD") cannot be used to claim prejudice or inability to introduce contrary evidence.

other traumatic triggering events, Mr. Hixon's continuing repeated nightmares about the April 2, 2005 incident (to the exclusion of nightmares about other events), and his newly-acquired acute fears of police officers related to the event.  (See Shirriff Aff., ¶ 15; Jacobs Aff., ¶ 12.)

Identifying the cause or triggering traumatic event in the case of a PTSD patient is frequently apparent.  (See Jacobs Aff., ¶ 10; Shirriff Aff., ¶ 13.)  Identifying a single triggering, traumatic event that is sufficiently significant to result in PTSD symptoms is not complicated, such as identifying the cause of fibromyalgia.  (Id.)  Both Dr. Shirriff and Ms. Jacobs state that Mr. Hixon's PTSD diagnosis was not a close-call, and that no additional testing was available that was relevant to determine the diagnosis or to assess the cause of Mr. Hixon's PTSD.  (See Shirriff Aff., ¶¶ 12, 15; Jacobs Aff., ¶¶ 9, 12.)  In his deposition, Dr. Shirriff testified he had no doubt at all that the April 2, 2005 incident was the cause or triggering traumatic event of Mr. Hixon's PTSD.

| | |
|---|---|
| Q: | . . . [D]id you attempt to assess and determine what the cause of Mr. Hixon's PTSD is? |
| Iverson: | [Objection interposed; language omitted.] |
| A: | Yes. |
| Q. | Is there any doubt in your mind what the cause of this PTSD is? |
| Iverson: | [Objection interposed; language omitted.] |
| A: | No. |
| Q: | What was the cause as you've determined based on you treatment of him? |

Iverson:        [Objection interposed; language omitted.]

A:              It was his experience with the police in April of, is
                it 2005?

(Shirriff Depo., at 40-41.)

If Defendants wish to question the methodology used by Dr. Shirriff and Ms. Jacobs in determining causation, they may do so through cross-examination.

Finally, Defendants err in asserting Dr. Shirriff and Ms. Jacobs did not rule out other causes.    Defendants describe at length Dr. Shirriff's testimony regarding "perception."  (See Def. Mem. at 7-8.)  Mr. Hixon does not seek testimony from Dr. Shirriff and Ms. Jacobs about details of Mr. Hixon's description of the events that occurred to him on April 2, 2005.  The issue for purposes of diagnosis is what trauma Mr. Hixon experienced and whether he could perceive it as a life threatening or serious injury type of trauma.  Here, he certainly could and did.

Reliable causation testimony need not rule out every possible alternative cause. See Kudabeck, 338 F.3d at 861 (citing Lauzon, 270 F.3d at 693-94).  Secondly, and more importantly, Dr. Shirriff and Ms. Jacobs both considered whether there were other significant traumatic events that could result in a diagnosis of PTSD and found none. They state no other traumatic events or injuries were disclosed by Mr. Hixon, his wife or his medical records.  (See Shirriff Aff., ¶¶ 9, 12-16; Jacobs Aff., ¶¶ 7, 9-12.)  Dr. Shirriff testified in his deposition that non-life-threatening financial or marital problems could not be the cause of PTSD.  (See Shirriff Depo. at 82.)  Defendants' challenge based on a

purported requirement to eliminate other causes is both factually inaccurate and inappropriate to this PTSD case.

### 3.   Issue of Use of Deposition Testimony of Dr. Shirriff At Trial.

Mr. Hixon intends to call Dr. Shirriff as a witness at trial.

## B.   EXPERT TESTIMONY ON LIABILITY – ANTHONY BOUZA.

Defendants admit that Plaintiff timely disclosed former Minneapolis Police Chief Anthony Bouza as a rebuttal expert on the use of police force, and timely served Defendants with Chief Bouza's Expert Report.[9]  Defendants also do not argue that Chief Bouza, whose experience in law enforcement spans 50 years, lacks the requisite qualifications to provide expert testimony on police use of force.  Notwithstanding, Defendants argue, without legal or factual support, that Chief Bouza should be barred from providing expert testimony in this case.[10]

Because Chief Bouza is amply qualified, and because Plaintiff timely disclosed him and provided his report to Defendants, there can be no dispute that he should be permitted to testify on Plaintiff's behalf in this case.  (See the Court's Pretrial Scheduling Order (stating "Each party may call all disclosed experts at trial").)  In the interest of judicial economy, Plaintiff requests the Court's leave to call Chief Bouza in his case in chief.  At a minimum, however, Plaintiff must be allowed to call Chief Bouza in rebuttal

---

[9] Defendants' Memorandum states, presumably in error, that the deadline for expert disclosures contained in the Pretrial Scheduling Order was January 5, 2007.  In fact, the deadline for disclosure of rebuttal experts was February 1, 2007, the same date that expert reports were due, and the date on which Plaintiff served notice of Chief Bouza as an expert witness and provided Defendants with his report.

[10] (See pp. 9-10, Defendants' Memorandum of Law In Support of Motion in Limine to Exclude Expert Testimony.)

to respond to the representations of any defense witness, including defense expert Scott

Bechtold, about the legitimacy of Defendants' use of force in arresting Plaintiff.

## **CONCLUSION**

Based on the foregoing reasons, Mr. Hixon respectfully requests that this Court

reject Defendants' Motion in Limine to exclude the testimony at trial of Dr. Shirriff, Ms.

Jacobs, and Mr. Bouza.


Dated:  August 23, 2007          PARKER ROSEN, LLC


By:___s/Andrew D. Parker_____
      Andrew D. Parker          #195042
      Anthony G. Edwards        #342555
      133 First Avenue North
      Minneapolis, Minnesota 55401
      Telephone: (612) 767-3000

      ATTORNEYS FOR PLAINTIFF