UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Aljuan C. Hixon, | Case No. 06-Civil-1548 (RHK/JSM) |
| Plaintiff, | |
| vs. | **MOTION IN LIMINE FOR ADMISSION OF INDEPENDENT MEDICAL EXAMINATION OF DR. CRIS JOHNSTON** |
| City of Golden Valley, Dennis Arons, Mario Hernandez, David Kuhnly, and Christine McCarville, | |
| Defendants. | |

---

## I.      INTRODUCTION

Plaintiff seeks to offer into evidence the Independent Medical Examination ("IME") report of Dr. Cris Johnston. Dr. Johnston, a clinical psychologist, was hired by Defendants to conduct an independent evaluation of Plaintiff's mental-health status. Dr. Johnston interviewed Mr. Hixon, conducted a series of standardized tests, and concluded that Mr. Hixon was suffering from chronic post-traumatic stress disorder ("PTSD"), with depressive components, as a direct result of his violent arrest by Defendants Hernandez and McCarville.

It is undisputed that Dr. Johnston's report is stipulated to be authentic, that it bears no indicia of unreliability, and that Defendants cannot be surprised in any way by its contents. It is similarly undisputed that Dr. Johnston prepared the report during his regular course of his business as an IME examiner for BMI, and

1

indeed his primary work involves preparing such reports.[1]  Dr. John Shirriff, Plaintiff's treating psychiatrist, has testified that the standardized testing conducted by Dr. Johnston and his report are important to Mr. Hixon's continuing treatment.[2]  Accordingly, the report should properly be admitted into evidence as a business record.

## II.    ARGUMENT

### A.    Dr. Johnston's IME Report Should Be Admitted Into Evidence.

The Rules of Evidence permit a party to offer into evidence:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, <u>all as shown by the testimony of the custodian or other qualified witness</u> . . . unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

See F.R.Evid. 803(6) (emphasis added).

Medical reports can be admissible as business records containing opinions and diagnoses under the Rule, unless the circumstances indicate a lack of trustworthiness.  See 5 Jack B. Weinstein and Margaret A. Berger, Weinstein's Federal Evidence §803.08[6][b] (Joseph M. McLaughlin, ed., 2d Ed.2007).  Indeed, the Advisory Committee note to F.R.Evid. 803(6) specifically provides that an independent medical examiner's report is admissible as a business record

---

[1] (See Affidavit II of Anthony G. Edwards, ¶¶ 4 and 5 , Exs. 3 and 4.)
[2] (See Affidavit II of Anthony G. Edwards, ¶ 6, Ex. 5.)

where it is offered by the party opposite to the party at whose request it was prepared:

> A physician's evaluation report of a personal injury litigant would appear to be in the routine of his business. If the report is offered by the party at whose insistence it was made, however, it has been held inadmissible . . . otherwise if offered by the opposite party. Korte v. New York, N.H. & H.R. Co., 191 F.2d 86 (2nd Cir. 1951), *cert. denied* 342 U.S. 868, 72 S.Ct. 108.

See 1972 cmte. cmt; see also Richardson v. Perales, 402 U.S. 389, 402-05, 91 S.Ct. 1420, 1428-29 (1971) (holding, in the context of a Social Security disability hearing, that "a written report by a licensed physician who has examined the claimant and who sets forth in his report may be received as evidence," and noting that "[c]ourts have recognized the reliability and probative worth of written medical reports . . . and . . . have admitted them as an exception to the hearsay rule"); Pace v. Nat'l R. Passenger Co., 291 F.Supp. 93, (D.Conn. 2003) (holding that an IME report prepared in anticipation of litigation was admissible where offered by the party opposing the one who had requested the report).

  Here, the parties have stipulated to the authenticity of Dr. Johnston's report, satisfying that element of admissibility. It is also clear that Dr. Johnston's IME report was prepared as part of a regularly-conducted business activity. Behavioral Medicine Interventions ("BMI"), Dr. Johnston's employer, routinely performs IMEs in its regular course of business,[3] and conducting such examinations is one

---

[3] (See Affidavit II of Anthony G. Edwards, ¶ 4, Ex. 3.)

of Dr. Johnston's primary duties for BMI.[4] Because Dr. Johnston is, for all intents and purposes, in the IME business, his IME report is a business record and admissible under F.R.Evid. 803(6), absent any indicia of its untrustworthiness. See White v. Zutell, 263 F.2d 613, 615 (2nd Cir. 1959) (admitting an IME report as a business record where "[t]he making of the report was clearly a part of this specialist's 'business'; indeed that is what he was commissioned to do").

No indicia of untrustworthiness exist here as a basis for exclusion of Dr. Johnston's report. There is no dispute that the report is reliable – Dr. Johnston relied not only on his firsthand observation of Mr. Hixon but on well-established, peer-reviewed standardized tests, including the Minnesota Multiphasic Personality Inventory-2 ("MMPI-2"), validated by the Validity Indicator Profile Verbal Subtest[5], in reaching his conclusion that Mr. Hixon suffers from chronic post-traumatic stress disorder with depressive symptoms caused by the subject incident. Dr. Johnston's diagnosis is substantiated by similar opinions, contained in Mr. Hixon's medical records, by his treating physicians, including Dr. Karen Kramer, Dr. John Shirriff, and psychologist Ginny Jacobs. To the extent Dr. Johnston has any bias that might otherwise tend to cast doubt on the reliability of his diagnosis, that bias is presumably in favor of Defendants, who hired him, and creates no impediment to the admission of his report by Plaintiff.

---

[4] (See Affidavit II of Anthony G. Edwards, ¶ 5, Ex. 4.)
[5] (See Affidavit II of Anthony G. Edwards, ¶ 2, Ex. 1.)

There can also be no legitimate dispute that Dr. Johnston is amply qualified to offer his expert opinion. Dr. Johnston has 24 years of practical experience as a clinical psychologist since earning his PhD, and has authored numerous professional publications.[6] Obviously the Defendants felt Dr. Johnston was adequately qualified, hence the fact that they chose him to evaluate Mr. Hixon and prepare an expert report.

There is, further, no issue of any possible unfair surprise in the admission of this evidence – Dr. Johnston's report was prepared at Defendants' request, and they have been aware of its contents since December 2006, when the report was prepared.[7]

Clearly, then, there is an ample legal and factual basis for the admission of Dr. Johnston's report as a business record. The report is also clearly relevant to this case, as it relates directly to the causation, nature and extent of Plaintiff's damages.

Moreover, Dr. John Shirriff has testified that Dr. Johnston's report is part of Mr. Hixon's medical record, and Dr. Shirriff has relied upon it in treating Mr. Hixon.[8] A treating physician is a "qualified witness" under F.R.Evid. 803(6), and accordingly can lay the foundation for the admission of medical evidence into evidence, even if he did not create the actual records being offered. See United States v. Woods, 970 F.Supp. 711, 720 (D.Minn.1997) (holding that psychiatrist

---

[6] (See Affidavit II of Anthony G. Edwards, ¶ 3, Ex. 2.)
[7] (See Affidavit II of Anthony G. Edwards, ¶ 2, Ex. 1.)
[8] (See Affidavit II of Anthony G. Edwards, ¶ 6, Ex. 5.)

could lay a foundation for portions of patient's voluminous medical records on which he relied in forming his opinion regarding patient's future dangerousness, as it would be unduly burdensome to require production of all or most of the individuals referenced in the records who had examined or treated the patient). Accordingly, the report should properly be admitted into evidence.

**B.     At a Minimum, Dr. Shirriff Should Be Permitted to Testify Regarding Information Contained in Dr. Johnston's IME Report.**

To the extent the Court does not admit Dr. Johnston's IME report into evidence, Plaintiff requests that the Court, at a minimum, permit Dr. Shirriff to testify regarding the contents of Dr. Johnston's report, upon which he relied for purposes of ongoing treatment, in accordance with F.R.Evid. 703.

Dr. Johnston's report, and the standardized test results included therein, will be of great probative value to the jury in evaluating what weight to give to Dr. Shirriff's testimony (by independently corroborating his diagnosis). Meanwhile, this evidence can have no prejudicial value to Defendants, who hired Dr. Johnston to reach the conclusions contained in his report, particularly since Dr. Johnston's diagnoses are essentially identical to those reached by every physician who has treated Mr. Hixon's since the subject incident. Because the probative value of this evidence substantially outweighs whatever minimal prejudicial effect this information might have, Dr. Shirriff should be permitted to testify regarding Dr. Johnston's IME findings.

6

### III. CONCLUSION

Based on the foregoing reasons, Mr. Hixon respectfully requests that this Court admit the IME report of Dr. Cris Johnston into evidence in this case.

Dated: August 31, 2007         PARKER ROSEN, LLC

By:   s/Andrew D. Parker
    Andrew D. Parker      #195042
    Anthony G. Edwards    #342555
    133 First Avenue North
    Minneapolis, Minnesota 55401
    Telephone: (612) 767-3000

ATTORNEYS FOR PLAINTIFF