UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
_____

| | |
|---|---|
| Aljuan C. Hixon, | Case No. 06-Civil 1548 (RHK/JSM) |
| Plaintiff, | |
| v. | **MEMORANDUM REGARDING ADDITIONAL ISSUES RAISED AT PRETRIAL CONFERENCE** |
| City of Golden Valley, Dennis Arons, Mario Hernandez, David Kuhnly, and Christine McCarville, | |
| Defendants. | |

_____

## I.   INTRODUCTION

This memorandum is to respond to the Court's request for additional information regarding the following subjects discussed at the Court's Pretrial Conference on August 28, 2007.

1.   Contemplated evidence of Plaintiff's background – The Court has excluded any reference to Plaintiff's taxes or IRS-related information, including Plaintiff's late filing of his tax returns.  The Court has indicated, however, that if Plaintiff offers excessive positive evidence regarding Plaintiff's background, it might open the door to Defendants offering said tax evidence in rebuttal.  Plaintiff has requested the Court's direction regarding where the line will be drawn to opening the door for admission of the tax evidence.  This submission will outline the evidence Plaintiff intends to introduce regarding the Plaintiff's background.

2. <u>Contemplated references to race in evidence, opening statement, and argument</u> – The Court has dismissed Plaintiff's claim under the Minnesota Human Rights Act alleging racial discrimination. Notwithstanding this fact, race remains an important and relevant theme in this case. Plaintiff is, at the Court's request, identifying race-related evidence and argument he anticipates offering at trial.

3. <u>Contemplated subject matter of testimony of Chief Anthony Bouza</u> – The Court has dismissed Plaintiff's claims of false arrest and false imprisonment in this case. This will predictably reduce the scope and subject matter of the testimony of Plaintiff's expert on police use of force, former Minneapolis Police Chief Anthony Bouza. Plaintiff is, by request of the Court, identifying the expected subject matter of Chief Bouza's testimony, which will relate to Defendants' use of excessive force in arresting Mr. Hixon.

Plaintiff will file, under separate cover, Motions in Limine regarding the admissibility of the Independent Medical Examination report of Dr. Cris Johnston and Plaintiff's request that the Court exclude references describing the Court's previous findings regarding the legality of the arrest of Al Hixon on April 2, 2005.

**II.     CONTEMPLATED EVIDENCE OF PLAINTIFF'S BACKGROUND**

Plaintiff intends to offer evidence of his background during his case in chief to provide a context for the facts of the subject incident. Plaintiff's contemplated background evidence, particularly evidence regarding his upbringing and his more recent community service work in collaboration with local government leaders, will

show that he is a person who would not likely resist arrest or flee police, both central issues in this case. This evidence will also show that Plaintiff was a highly productive, successful contributor to his family and his community prior to this incident. This information will assist the jury in appreciating the extent of Mr. Hixon's psychological damages suffered as a result of this incident, including the harmful effects of his diagnosed PTSD, depression, and cognitive impairment following the incident.

The Court has ruled that Defendants may make no reference to Plaintiff's tax filings or tax issues during this trial, unless Plaintiff opens the door to that inquiry through his presentation of evidence regarding his background. During the Pretrial Conference, Plaintiff requested the Court's guidance on where the line will be drawn regarding "opening the door" so that Plaintiff does not inadvertently cross a line that would, in the Court's view, allow for the entry of evidence regarding Plaintiff's taxes.

Specifically, Plaintiff intends to introduce the following evidence regarding his background:

- Plaintiff was born and raised in segregated Birmingham, Alabama, during the civil rights movement (discussed further below, in connection with contemplated race-related evidence).
- Plaintiff holds an undergraduate degree in electrical engineering from Tuskegee University, and has completed all required course work for a Master's degree in software engineering from St. Thomas University.

- Plaintiff has held engineering, production management, and executive positions with companies including Honeywell, Norwest Bank, Hennepin County Medical Center, US West, and Information Management Systems. Plaintiff has, since 2000, owned and operated a residential construction business, AMB Construction.

- Plaintiff has participated for many years in Junior Achievement, both as a high-school student and, later, as a volunteer mentor and instructor.

- Plaintiff has volunteered as a motivational speaker to high school students through Infinity Systems.

- Since his arrival in Minnesota in 1989, Mr. Hixon has been active in the Minnesota chapter of the Tuskegee Alumni Association. He has been President of the chapter since 1994.

- In the fall of 1994, Plaintiff volunteered for the Minneapolis Neighborhood Revitalization Program, and worked to secure a $32,000 grant from the McKnight Foundation to fund the program.

- In 1995, Plaintiff was selected as one of ten McKnight Foundation Award recipients for his community service work.

- In 1997, Plaintiff was recognized with the City Business "40 under 40" Award, which annually honors Minnesota businesspeople under age 40 for their professional and personal accomplishments.

- Plaintiff has worked directly with the Golden Valley Police Department on community safety initiatives, including securing the removal of a basketball hoop that was attracting gang members from North Minneapolis to his neighborhood in Golden Valley.

- Plaintiff has worked with the Golden Valley City Council to remove rental tenants engaged in illegal activity in his neighborhood.

- Plaintiff was recently named President of the Golden Valley chapter of Lions International.

- Prior to April 2, 2005, Plaintiff had never been arrested or charged with any crime whatsoever nor had he ever personally had any previous difficulties with police.

### III.   CONTEMPLATED REFERENCES TO RACE IN EVIDENCE, OPENING STATEMENT AND ARGUMENT

Although the Court has dismissed Plaintiff's claim of racial discrimination under the Minnesota Human Rights Act, race remains an important theme in this case. The Plaintiff's race is directly relevant and, in fact, critical in this case on the central themes of:

1. Whether it is believable Plaintiff would have fled the police and/or resisted arrest;

2. Whether Defendants are telling the truth regarding the identifying information they had prior to responding to the Sinclair station;

3. The traumatic nature of this incident on this particular Plaintiff; and

4. The availability and amount of punitive damages.

In addition, the race of the persons directly involved in Plaintiff's arrest is background information that will necessarily be presented in the context of telling the story of the subject incident.

Specifically, the following references to race will be part of Plaintiff's case, including Plaintiff's presentation of evidence and in opening statement and closing argument:

- <u>Plaintiff was raised in Birmingham, Alabama during the height of the civil rights movement during the 1960's and 1970's. Plaintiff will briefly describe being raised primarily by his mother in this environment, and the strict lessons she taught him about dealing with police and authority.</u>

This information will show that Plaintiff, who was specifically taught to fully cooperate with police or face potentially dire consequences, would not be likely to have fled or resisted Defendants. It will also provide a context for why this particular plaintiff, raised in a climate of racial animus and racially-motivated police violence, was especially vulnerable to suffering psychological damage by being assaulted by police.

- <u>Plaintiff was raised in a mixed black and Jewish neighborhood, and his primary male authority figure was an older Jewish neighbor. Plaintiff currently lives in a racially-mixed neighborhood in Golden Valley.</u>

This information will demonstrate that Plaintiff, who is comfortable around white people, would not have overreacted to the presence of non-black police officers by fleeing or resisting arrest.

- <u>Scot Herd, whose robbery of the US Bank counter in the Golden Valley Byerly's store led to the police response in this case, is Caucasian. Mr. Hixon is black.</u>

This uncontroverted background information regarding the descriptors of persons involved will necessarily be evident in the course of telling the story of Mr. Hixon's arrest. Combined with the lack of knowledge of a "black male" being involved as discussed more fully below, this evidence is directly relevant to the legitimacy of Defendants' use of force against Plaintiff, the central issue in this case.

- <u>The officers who arrested Plaintiff on April 2, 2005 were not informed of any black male suspect involved with the robbery prior to the arrest.</u>

The Defendants claim that at the time they responded to the Sinclair station, they were aware of a black male suspect involved in the robbery of the US Bank counter. Defendants then rely on this purported knowledge as a justification for their actions, including their use of force toward Mr. Hixon. Indeed, Dennis Arons, the senior officer involved in Mr. Hixon's arrest, has testified under oath that there would not have been a basis to focus on Mr. Hixon, much less arrest him, if the police had not been looking for a black male suspect:

> Q: If there had been an old lady standing in the area of those cars and when she say the gun, she ran to the building, would you have been – would it have been appropriate for you to draw down with your gun on her?
>
> * * *
>
> A: No, because at that time I'm not looking for an old lady.
>
> * * *

7

> Q: If at that time you were not looking for a black male, your answer would be the same, correct?
>
> A: Correct.

The evidence will show that all radio communications are recorded and are retained by law for 90 days. Here, within two weeks of the incident Plaintiff's then lawyer informed the City to preserve all radio communications. All communications have been requested and provided. There is no radio communication referring to a black male suspect. Moreover, the City's own witnesses provide a completely inconsistent version of how they claim to have been informed of a black male involved with the robbery before arriving at the Sinclair station.

Evidence that the involved officers, including Defendants, fabricated this "black male" information goes both to the officers' credibility and undermines one of the prime rationales they allege for their conduct. This fabrication of evidence is also relevant to potential punitive damages in this case.

Further, based on the Defendants' violent arrest of a black male <u>as a suspect in a crime committed by a white man</u>, and their after-the-fact fabrication of the "black male" evidence, the jury could reasonably infer that Defendants' use of force toward Mr. Hixon was motivated, at least in part, by his race. Such an inference could lead the jury to conclude that Defendants' conduct rose to the level of malice, justifying an award of punitive damages in this case. Accordingly, Plaintiff should be permitted to suggest in argument that, based on the facts of the case, race may have been a contributing factor in Defendants' decision to use force in arresting Mr. Hixon.

## IV.  CONTEMPLATED SUBJECT MATTER OF TESTIMONY OF CHIEF ANTHONY BOUZA

As the Court has observed, the Court's Order granting partial summary judgment in this case will truncate the length and subject matter of the testimony of Plaintiff's expert on police use of force, former Minneapolis Police Chief Anthony Bouza.

Plaintiff expects that Chief Bouza will testify that, in his expert opinion, the totality of circumstances did not justify the force used in arresting Mr. Hixon. Specifically, Plaintiff expects Chief Bouza will testify that Plaintiff's moving to the side of the Sinclair station did not warrant the use of force in arresting Plaintiff, and that in light of Mr. Hixon's full cooperation, it was neither necessary nor appropriate to use such force.  Chief Bouza will further testify that even if Mr. Hixon provided some measure of resistance, as Defendants claim, that would not have justified the force and violence applied in arresting him based on proper police procedure.

As to the Defendants' use of pepper spray, Chief Bouza will testify that it was totally inappropriate to use pepper spray _after_ Mr. Hixon was handcuffed, and even if, as Defendants suggest, the pepper spray was used before he was handcuffed, its use was unnecessary and unjustified based on the relatively slight resistance even as described by Defendants.  Chief Bouza will testify that, regardless of when and why the pepper spray was used, it was inappropriate to spray it at point blank range, as

9

Defendants admit occurred, and to ignore Mr. Hixon's repeated requests for medical care or an opportunity to rinse off his face following his exposure to pepper spray.

Dated: August 31, 2007          PARKER ROSEN, LLC

                                By:   s/Andrew D. Parker
                                   Andrew D. Parker          #195042
                                   Anthony G. Edwards        #342555
                                   133 First Avenue North
                                   Minneapolis, Minnesota 55401
                                   Telephone: (612) 767-3000

                                ATTORNEYS FOR PLAINTIFF