UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

_____

Aljuan C. Hixon,                          Case No. 06-Civil 1548 (RHK/JSM)

        Plaintiff,

    v.

City of Golden Valley,                    **PLAINTIFF'S RESPONSE TO**
Dennis Arons,                             **DEFENDANTS' AMENDED**
Mario Hernandez,                          **WRITTEN OBJECTIONS TO**
David Kuhnly, and                         **PLAINTIFF'S EXHIBITS**
Christine McCarville,

        Defendants.

_____

      NOW COMES PLAINTIFF Al Hixon and, through counsel, submits the following

responses to Defendants' Written Objections to Plaintiff's Exhibits:

**Exhibit 1 – Incident Report – Obstruction Charge**

      This document is not hearsay, in that it is not a statement of fact being offered for

its truth, and constitutes an admission by Defendant Hernandez, who prepared it.  The

Report both describes the incident in the words of Defendant Hernandez and claims

Plaintiff used force.  It is also excepted from the hearsay rule as a public record under

F.R.Evid. 803(8).  See  Parsons v. Honeywell, Inc., 929 F.2d 901, 907 (2nd Cir.1991)

(stating that in civil trials "[i]t is well established that entries in a police report which

result from the officer's own observations and knowledge may be admitted") (quoting

United States v. Pazsint, 703 F.2d 420, 424 (9th Cir.1983)); Foster v. General Motors

Corp., 20 F.3d 838 (8th Cir. 1994) (holding that police report "was clearly admissible under the hearsay exception for public records").

## Exhibit 6 – Arrest Report – Hixon

Defendants contend Exhibit 6 is not relevant.  The Federal Rules of Evidence define relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  See F.R.Evid. 401.

This document is directly relevant to documenting the facts and circumstances of Mr. Hixon's arrest.  See Tennessee v. Garner, 471 U.S. 1, 8-9,  105 S.Ct. 1694, 1700 (1985) (noting that a fact finder must consider "the totality of circumstances" in evaluating the propriety of the use of force by police in effecting an arrest).  It documents Defendant Hernandez's bad-faith efforts to charge Mr. Hixon with obstruction of legal process with force, a charge for which none of the involved officers can articulate a factual basis, and which was later withdrawn by the Deputy Chief of Police.  The charge and its subsequent withdrawal by the City can be reasonably inferred by a jury (and, in fact, tends to show) that the officers' allegation that Mr. Hixon resisted arrest, much less by force, never happened.  This is a central issue in this case.  This evidence could also be considered by the jury as evidence of the Defendants' consciousness of guilt regarding their use of force toward Plaintiff, and goes directly to their credibility, to the extent the charge is viewed as having been trumped-up.  Finally, this evidence of Defendants' bad

faith charging as a means for excusing their behavior is also relevant to the jury's determination of an appropriate punitive-damages award.[1]

This document is not hearsay as it constitutes an admission by Defendant Hernandez, who prepared it.  It is also excepted from the hearsay rule as a public record under F.R.Evid. 803(8) (see discussion regarding Exhibit 1, above).

### Exhibit 10 – Criminal Complaint Referral – Hixon

This document is relevant to the facts and circumstances of Mr. Hixon's arrest and related charges.  It documents Defendants' bad-faith efforts to charge Mr. Hixon with obstruction of legal process with force in an effort to justify their use of force (**see discussion regarding Exhibit 6, above**).  Withdrawal of all charges by the Deputy Chief raises a reasonable inference that obstruction of legal process never occurred.  The evidence will show that Mr. Hixon used no force at all throughout the incident.  This document is not hearsay, as it is an admission by Defendant Hernandez, and not a statement of fact being offered for its truth.  It is also excepted from the hearsay rule as a public record under F.R.Evid. 803(8) (see discussion regarding Exhibit 1, above).

### Exhibit 11 – Minnesota Statute § 609.50

This excerpt of the Minnesota Criminal Code is directly relevant to documenting the facts and circumstances of Mr. Hixon's arrest.  It reflects that Defendants' efforts to charge Mr. Hixon with obstruction of legal process with force lacked a legitimate legal basis, and were in fact done in bad faith in an effort to justify their use of force in

---

[1] (See Minnesota CIVJIG 94.10 (providing that in considering punitive damages for an intentional tort in Minnesota, the jury should consider "[t]he length of time of the misconduct and if defendant hid it").)

arresting him (**see discussion regarding Exhibit 6, above**).  This statute will be critical to the jury understanding the bad-faith nature of the charge.

## Exhibit 12 – Correspondence confirming request by Deputy Chief not to prosecute

This letter is relevant, in that it reflects that Defendants' effort to charge Mr. Hixon with obstruction of legal process with force lacked a legitimate legal basis, and was in fact done in bad faith in an effort to justify their use of force in arresting him (see discussion regarding Exhibit 6, above).  The withdrawal of all charges being directed by the Deputy Chief can reasonably be inferred to be an admission that no obstruction occurred, let alone with force.  The evidence will show that Mr. Hixon used no force at all throughout the incident.

## Exhibits 13 and 14 – Correspondence regarding request for radio communications

These documents are relevant to the issue of credibility regarding whether the arresting officers knew that a black male was involved with the white male robbery suspect.  To the extent Defendants attempt to argue that certain non-disclosed radio communication information on this issue existed at one time but no longer exists, this correspondence casts significant doubt on this assertion.

## Exhibit 15 – Transcript of all radio communications

Plaintiff does not object to playing the original cassette tape in question to the jury, assuming that Defendants stipulate that Plaintiff may also provide jurors with the transcript prepared by the City of Golden Valley, to the jury in this case.

**Exhibit 17 – 4/4/05 E-mail from Police Chief to City Manager regarding Employee Complaint Procedures and Hixon Investigation**

This document is relevant in that it describes the Golden Valley Police Department's ("GVPD's") policy for responding to complaints of police misconduct, which was not followed in Mr. Hixon's case.  The GVPD's whitewash of this incident supports a finding of wrongdoing in the handling of Mr. Hixon's handcuffing and arrest.

The Police Chief's failure to follow the City's own policy on investigation (as enumerated in Exhibit 17), or to even interview a single person before finding Mr. Hixon's complaints "unfounded," even after receiving letters of complaint regarding Mr. Hixon's arrest, represents a whitewash of the incident.  The jury should be permitted to hear about the GVPD's failure to investigate, in order to consider <u>why</u> the City was so averse to looking into the incident.  The jury could reasonably infer that the GVPD abandoned its investigation specifically because it was aware or believed its officers had done wrong, and did not want this wrongdoing brought under documented scrutiny.  This theory is further bolstered by the directive given to the prosecutor by the Deputy Chief to withdraw all charges against Mr. Hixon. This evidence tends to show that the arresting officers <u>did</u> use excessive force toward Mr. Hixon, the central issue in this case.  Finally, this evidence supports that Plaintiff's psychological injuries were exacerbated.

This document is not hearsay, in that it is not a statement of fact being offered for its truth, it is merely a statement of intent establishing the Police Chief's knowledge of his obligation under City policy and his intention regarding the policy.

**Exhibit 20 – 5/12/05 Correspondence from Police Chief to Al Hixon**

This document is relevant in that it promises a "thorough and complete investigation of the facts and circumstances surrounding the events in which [Mr. Hixon was] involved on the afternoon of April 2, 2005."  No such investigation was in fact conducted.  The failure of the GVPD to conduct the promised "thorough and complete investigation" regarding Mr. Hixon's complaints is evidence of the GVPD's awareness of officer wrongdoing, and hence evidence that officer wrongdoing occurred (see discussion regarding Exhibit 17, above).  This evidence also supports the exacerbation of Plaintiff's damages.  This document is not hearsay, in that it is not a statement of fact being offered for its truth, it is merely a statement of intent establishing the Police Chief's knowledge of his obligation under City policy and his intention regarding the policy.

**Exhibit 21 – Deputy Chief Roger Johnson's finding that Al Hixon's Complaint is Unfounded**

This document is relevant in that it reflects that no investigation of Mr. Hixon's complaints regarding the subject incident was conducted, in spite of Chief Hernz's previous assurances that there would be an investigation.  The failure of the GVPD to conduct even a cursory investigation regarding Mr. Hixon's complaints, or even to interview a single witness, is evidence of the GVPD's awareness of officer wrongdoing, and hence evidence that officer wrongdoing occurred (see discussion regarding Exhibit 17, above).

This document is not hearsay, in that it is not a statement of fact being offered for its truth.  It is also excepted from the hearsay rule as a public record under F.R.Evid. 803(8) (see discussion regarding Exhibit 1, above).

## Exhibit 23 – "Reasonableness Test"

This objection is untimely.  The objection is related to an Exhibit not objected to by the deadline set in this Court's June 29 Trial Order.  This is the first time any objection has been posed to this Exhibit.

Contrary to Defendants' objections, this document is clearly relevant.  The document establishes the standard on which Defendants were trained regarding what level of force is warranted by a particular situation (and thus, what they understood to be the applicable standard for use of force in apprehending Mr. Hixon).  If the Defendants exceeded these standards, it tends to show that the level of force they used was unreasonable.  This evidence certainly relates to an objectively reasonable standard. Moreover, to the extent Defendants were aware of this reasonableness standard and exceeded it, it tends to show that their use of force toward Mr. Hixon was willful.  This goes to the availability and amount of punitive damages in this case.

## Exhibit 29 – Fax from Plaintiff to Rita McKee, dated 4/28/05

The objection is related to an Exhibit not objected to by the deadline set in this Court's June 29 Trial Order.  This is the first time any objection has been posed to this Exhibit.

Defendants' objection to this Exhibit is misplaced.  This exhibit is excepted from the hearsay rule as a statement made for purposes of medical diagnosis or treatment,

under F.R.Evid. 803(4).  See United States v. Wright, 340 F.3d 724, 733 (8th Cir. 2003) (noting that "[s]tatements made by a patient for the purposes of medical diagnosis or treatment are an established exception to the hearsay rule").    This exhibit is also excepted as a statement of then-existing physical condition under F.R.Evid. 803(3).

## Ex. 30 – Health Partners Medical Records

This Court has already ruled that Plaintiff's medical records are admissible, and has further ruled that Plaintiff's treating physicians will be permitted to testify regarding his medical records.  Defendants have stipulated to the records' authenticity.  Hence, these records are admissible as business records, except to the extent they contain specific, impermissible references or language.

As to Defendants' specific objections, Plaintiff agrees that the language relating to Plaintiff's knee contained in pages AH0031-32 and AH0035 may be redacted.  Plaintiff further agrees that the references to blood pressure contained in AH0034 can be redacted.

## Exhibit 31 – Health Partners Insurance Non-Renewal Letter

The objection is related to an Exhibit not objected to by the deadline set in this Court's June 29 Trial Order.  This is the first time any objection has been posed to this Exhibit.

This document is clearly relevant.  Mr. Hixon's medical records reflect that he was seen for psychological treatment for months following the incident, but that he was not seen between the summer of 2005 and the summer of 2006.  To the extent Defendants try to argue that this gap in treatment is evidence that Mr. Hixon did not need further treatment and/or that Mr. Hixon is falsifying his psychological complaints, Exhibit 31 is

relevant to explaining the timing of Plaintiff's treatment. Specifically, this document indicates that Mr. Hixon's medical insurance was canceled in the fall of 2005, discouraging him from seeking additional psychological care until he was enrolled with another medical insurance carrier. This document relates to credibility and legitimacy of damages.

## Ex. 32 – BHSI Records

The Court has already ruled that Plaintiff's medical records are admissible, except to the extent they contain specific, impermissible references or language. (See discussion regarding Ex. 30, above.)

As to Defendants' specific objections, Plaintiff agrees that the language relating to Plaintiff's knee contained in pages AH0644-48 may be redacted. The reference to Dr. Cris Johnston's Independent Medical Examination ("IME") at p. AH0649, however, should <u>not</u> be redacted. This reference specifically provides that Mr. Hixon was "retraumatized" by Dr. Johnston's examination, and thus this information is relevant to his continuing psychological treatment. There is simply no legitimate basis for exclusion of this information. Moreover, Dr. Johnston's IME report is itself admissible in this case, and thus there is no cause to exclude references to Plaintiff's examination by Dr. Johnston. <u>See</u> Plaintiff's Motion in Limine for Admission of Independent Medical Examination of Dr. Cris Johnston (Docket #99).

## Ex. 33 – IME Report of Dr. Cris Johnston and MMPI/VIP Interpretive Report

Plaintiff's relevancy objection to this exhibit is misplaced. Indeed, one can scarcely imagine what evidence could be <u>more</u> relevant to Plaintiff's psychological

damages than a thorough examination by a qualified psychologist, finding that Plaintiff suffers from chronic post-traumatic stress disorder as a result of his violent assault by Defendants.

Dr. Johnson's IME report also easily survives Defendants' other objections, couched in hearsay.  In fact, the report is clearly admissible as a business record under F.R.Evid. 803(6).  Moreover, Plaintiff's statement that "there is no indication Dr. [John] Shirriff [Plaintiff's treating psychiatrist] used Dr. Johnston's records in the care and treatment of Mr. Hixon" is flatly false – in fact, Dr. Shirriff has specifically testified that he <u>has</u> used Dr. Johnston's report and test results in treating Mr. Hixon.  <u>See</u> Plaintiff's Motion in Limine for Admission of Independent Medical Examination of Dr. Cris Johnston (Docket #99).

## Ex. 34 – Courage Center Records

The Court has already ruled that Plaintiff's medical records are admissible, except to the extent they contain specific, impermissible references or language.  (See discussion regarding Ex. 30, above.)

Defendants' hearsay objections to Exhibit 34 are improper – Plaintiff's Courage Center records, whose authenticity has been stipulated to, are admissible as business records under F.R.Evid. 803(6).  Plaintiff's treating physicians, Dr. John Shirriff and Ginny Jacobs, can testify regarding the records, including diagnoses made therein.  <u>See</u> Plaintiff's Memorandum of Law in Reply to Defendants' Motion in Limine to Exclude Medical Records (Docket #87).

As to Defendants' specific objections, Plaintiff agrees that the language relating to Plaintiff's knee contained in pages AH1624 and AH1626-27 may be redacted.

## Ex. 35 – Harvard Mental Health Letter

Contrary to Defendants' arguments, Dr. Shirriff has testified he read Exhibit 35 specifically for the purpose of assisting his treatment of Mr. Hixon and not for purposes of this litigation or otherwise.   (Shirriff Depo. at 33-36.)   Because this Exhibit is information relied upon by Dr. Shirriff in forming his opinions regarding Mr. Hixon's condition, and the information is substantially more probative than prejudicial, it should properly be admitted under F.R.Evid. 703.   At a bare minimum, Plaintiff should be permitted to lay the foundation for the Harvard Mental Health Letter as a learned treatise, and read the Exhibit (or the relevant portions thereof) into the record.   See F.R.Evid. 803(18).

## Ex. 36-38 – Records from Valley Wellness, Center for Diagnostic Imaging, and Advanced Medical (relating to Plaintiff's back)

The Court has already ruled that Plaintiff's medical records are admissible, except to the extent they contain specific, impermissible references or language.  (See discussion regarding Ex. 30, above.)   The records contained in Exhibits 36 – 38 are abundantly clear, and no expert testimony will be necessary for the jury to understand the causal connection between Plaintiff's violent arrest and his injuries.    See Plaintiff's Memorandum of Law in Reply to Defendants' Motion in Limine to Exclude Medical Records (Docket #87).

As to Defendants' specific objection, Plaintiff agrees that the language relating to Plaintiff's knee contained in pages DEF0303-06 may be redacted.

## Ex. 39 – Summary Chart of Total Medical Expenses

The Court has already ruled that Plaintiff's medical records are admissible, except to the extent they contain specific, impermissible references or language.  (See discussion regarding Ex. 30, above.)  Exhibit 39 is merely a summary of Plaintiff's medical bills prepared for the convenience of the jury, and Plaintiff asks that it be admitted into evidence, together with Plaintiff's medical bills, to assist the jury in calculating an appropriate damages award in this case, should they find in Plaintiff's favor on liability. (See also F.R.Evid. 1006.)

## Ex. 40 – Itemized Medical Bills

The Court has already ruled that Plaintiff's medical records are admissible, except to the extent they contain specific, impermissible references or language.  (See discussion regarding Ex. 30, above.)

## Exhibits 22, 41-43 – Golden Valley Policies

The objection is related to an Exhibit not objected to by the deadline set in this Court's June 29 Trial Order.  This is the first time any objection has been posed to this Exhibit.

Exhibits 22, 41, and 42 are relevant in that Plaintiff will show that Defendants failed to follow Department policies regarding the use of force and specifically the use of pepper spray.  These documents tend to show what the City believes is reasonable and proper use of force and pepper spray.  It also shows what the Defendant officers

understood to be the reasonable and proper use of force in apprehending Mr. Hixon.  If the Defendants exceeded the GVPD's standards for permissible force, it tends to show that their use of force was unreasonable.  Further, it supports a finding of willfulness and motive relevant to the availability and amount of punitive damages in this case.

Exhibit 43, the GVPD's policy for investigation of alleged officer wrongdoing is also relevant, in that the GVPD's failure to follow its own policy, or to conduct even a cursory investigation regarding Mr. Hixon's complaints, is evidence of the GVPD's awareness of officer wrongdoing, and hence evidence that officer wrongdoing occurred (see discussion regarding Exhibit 17, above).

Dated this 1st day of September, 2007

Respectfully submitted,

PARKER ROSEN, LLC

By:   s/Andrew D. Parker
    Andrew D. Parker          #195042
    Anthony G. Edwards        #342555
    133 First Avenue North
    Minneapolis, Minnesota 55401
    Telephone: (612) 767-3000

ATTORNEYS FOR PLAINTIFF