UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Aljuan C. Hixon, | Case No. 06-Civil 1548 (RHK/JSM) |
| Plaintiff, | |
| v. | |
| City of Golden Valley, | **AFFIDAVIT OF** |
| Dennis Arons, | **ANDREW D. PARKER** |
| Mario Hernandez, | |
| David Kuhnly, and | |
| Christine McCarville, | |
| Defendants. | |

STATE OF MINNESOTA )
                    ) ss.
COUNTY OF HENNEPIN )

I, Andrew D. Parker, being first duly sworn on oath, depose and state as follows:

1.     I have been the lead counsel representing the Plaintiff in connection with the above-entitled action. I make this affidavit in support of Plaintiff's Motion for Attorneys' Fees and Litigation Expenses pursuant to 42 U.S.C. §1988.

2.     I received my undergraduate education at the University of Minnesota where I graduated *Phi Beta Kappa* in Political Science and Economics in 1984.  I graduated *cum laude* from the University of Minnesota Law School with a J. D. in 1988 and from the Humphrey Institute of Public Affairs with a Masters in Public Policy in the same year.

3.     From 1988 through 1995, I served as an associate attorney and then shareholder with Popham, Haik, Schnobrich and Kaufman, Ltd.  In 1995, I founded Smith Parker, P.L.L.P.  In November 2005, I founded my current firm, Parker Rosen, L.L.C.

4.     In 1988, I was admitted to practice before the Bar of the State of Minnesota, United States District Court for the District of Minnesota and the United States Supreme Court.  From the date of admission forward, I have remained a practicing member in good standing.

5.     I am a member of the Hennepin County, Minnesota State and American Bar Associations.

6.     My practice consists almost exclusively of civil litigation work of many varieties, including various forms of business litigation, employment law, labor law, civil rights law, and appellate advocacy.  Much of my experience has involved representing the Metropolitan Council, and various other government entities, including the University of Minnesota and the City of Minneapolis, among others.  My experience has included representing these government agencies against a variety of claims, including claims of police misconduct.  I hold an AV rating from Martindale-Hubbell, and have received various awards and recognitions over the past decade and beyond as being one of the top lawyers in Minnesota in my areas of practice.

7.     I have lectured at various venues including CLE's locally and Association conferences nationally.

8.     Some of my work has involved representing plaintiffs on contingent fee arrangements, in cases including personal injury matters, employment claims, and business lawsuits. With respect to my hourly clients, my firm's current billing rate is $400 per hour for complex and difficult litigation. My current hourly billing rate of $400 is to clients who typically either pay a retainer against which fees are billed and collected monthly or which are billed and paid monthly or quarterly. My actual hourly realization rate for contingency cases has been significantly higher.

9.     I began representing Mr. Hixon in June 2005, and since that time have been his legal counsel for all matters related to this case.

10.     A true and correct copy of Mr. Hixon's first Legal Services Agreement with Smith Parker, dated June 24, 2005, is attached hereto as **Exhibit ("Ex.") 1.**  Mr. Hixon signed this Agreement after being previously represented by another attorney, Larry Reed. Several other law firms had turned down the representation of Mr. Hixon before he came to Smith Parker. Mr. Hixon's initial Legal Services Agreement with Larry Reed provided that Plaintiff's counsel would receive a contingent fee on any judicial award, as well as the full amount of any court-ordered attorneys' fees and costs. This arrangement was not changed in the agreement reached between Smith Parker and Mr. Hixon. **(Ex. 1.)**

11.     I contacted Plaintiff following the Judgment in this case and in preparation of the related fee petition, to alter the Legal Services Agreement in a manner intended to shift a larger share of the total award to Plaintiff. Accordingly, on October 5, 2007, Plaintiff and I

3

executed a new Legal Services Agreement, superseding the previous Agreement. A true and correct copy of the new Agreement is attached hereto as **Ex. 2**. **Ex. 2** provides that Plaintiff's counsel will receive a 50% contingent rate on the gross amount of any judicial award, including any court-ordered attorneys' fees and costs. My colleague Robert Bennett, who has provided an Affidavit in support of the present Motion, echoes my opinion that this contingent rate is fair and reasonable, and states that he would not have taken this case for less than a 50% contingency.

12.    Attached hereto as **Ex. 3** is a true and accurate summary of the attorney fees and costs incurred in the course of Plaintiff's litigation, presented for the convenience of the Court. I have reviewed **Ex. 3**, as well as the documents relied on in its preparation. **Ex. 3** correctly summarizes the work performed and litigation costs incurred during the preparation and presentation of Mr. Hixon's case.

13.    Attached hereto as **Ex. 4** is a true and correct copy of the invoice for legal services provided while Smith Parker, P.L.L.P. represented the Plaintiff (April – October 2005). Attached hereto as **Ex. 5** is a true and correct copy of the invoice for legal services provided by Parker Rosen, L.L.C. as counsel for Plaintiff (November 2005 – September 2007). Each time record shows the date the service was rendered, offers a description of the service done on that date, identifies the lawyer or other professional staff member who performed the service and indicates the time increment for the service performed. These records have been maintained contemporaneously throughout the course of representation of

4

Mr. Hixon in this case, and the invoices accurately represent the services provided and time expended related to these services.

14.     During the representation of Mr. Hixon by Smith Parker and Parker Rosen, I have continuously been the person with overall responsibility for this file. Due to the scope and breadth of this file, several members of this firm have provided some services with regard to this matter. By the time this motion is heard, Smith Parker and Parker Rosen will collectively have provided more than 1,300 hours of legal services to Plaintiff in connection with this case.

15.     The two attorneys most involved in the representation of the plaintiff in this case were Anthony G. Edwards and me. Mr. Edwards is a 1998 graduate of the University of California – Hastings College of the Law. After graduating, Mr. Edwards spent six years as a litigation attorney in the United States Air Force's Judge Advocate General Corps. Mr. Edwards has litigated nearly 30 civil and criminal trials and approximately 20 arbitration hearings during his professional career. Mr. Edwards joined my former firm, Smith Parker, in 2005, and followed me when I founded Parker Rosen later in 2005. Mr. Edwards practices extensively with me on a variety of litigation matters. In the present case, as is typical, he handled much of the necessary legal research, writing and had a great deal of witness contact. He was instrumental in the preparation of all submissions to this Court and the U.S. Magistrate Judge. He was involved in the work done in preparing the required disclosures, discovery, settlement submissions, pretrial materials, motions in limine, our responses to

defense motions and pocket briefs on issues that we anticipated the need for briefing during

trial. He was also directly involved in and responsible for the technical presentation of

evidence and arguments. As the Court is aware, he also examined several witnesses and was

necessarily present throughout the trial, providing significant help in keeping evidence in

order and at the ready for an organized and more effective presentation. Mr. Edwards, as

associate trial attorney, has a rate for cases of this nature is $300 per hour.

16.    Nancy V. Mate is also a member of the Parker Rosen team, and was invaluable

in preparing this case for trial. Ms. Mate is a 1999 *cum laude* graduate of the University of

Minnesota Law School, and has worked with me at Smith Parker and Parker Rosen since

2000. Ms. Mate was extensively involved in providing legal research and writing support on

the present case. Ms. Mate was instrumental in preparing pocket briefs and research leading

up to trial including specific research on matters requested by the Court. Ms. Mate's rate for

cases of this nature as an associate non-trial attorney is $220 per hour.

17.    My partner, Daniel N. Rosen, graduated *cum laude* from the University of

Minnesota Law School in 1994. Mr. Rosen went on to lead the Rosen & Rosen law firm,

one of Minnesota's most experienced law firms in eminent domain/condemnation and

commercial and real estate litigation, before founding Parker Rosen with me in 2005. Mr.

Rosen is among the most experienced, respected litigation attorneys in the state and, enjoys

an AV rating from Martindale-Hubbell. With the input of a relatively small amount of time,

Mr. Rosen provided critical strategic assistance in this case. Mr. Rosen's rate for cases of this nature is $350 per hour.

18.     Douglas Wardlow, our newest addition at Parker Rosen, graduated *cum laude* from Georgetown University Law Center in 2004. After graduation, Mr. Wardlow served for one year as law clerk to the Hon. Justice G. Barry Anderson of the Minnesota Supreme Court. Mr. Wardlow went on to serve as an associate attorney at Faegre & Benson L.L.P. in Minneapolis and Skadden, Arps, Slate, Meagher & Flom LLP in Washington D.C. before joining Parker Rosen in the spring of 2007. Mr. Wardlow provided important research and analysis used in the successful prosecution of the present case. Mr. Wardlow's rate for cases of this nature as an associate non-trial attorney is also $200 per hour.

19.     Our paralegal, Barbara M. Livick, is billed separately and at the current rate of $125 for complex and difficult cases. Ms. Livick has more than 25 years of experience as a paralegal, including several years spent working with Robert Bennett, who specializes in police civil-rights litigation. Our legal assistants are billed at the current rate of $95 per hour for complex and difficult cases like Mr. Hixon's.

20.     The time spent on Plaintiff's case and hourly rates currently utilized for our personnel as of September 30, 2007, are listed as follows:

| ATTORNEY/STAFF MEMBER | HOURLY RATE | HOURS | TOTAL FEES |
|---|---|---|---|
| Andrew D. Parker | $400 | 413.4 | $165,360.00 |
| Anthony G. Edwards | $300 | 645.7 | $193,710.00 |
| Nancy V. Mate | $220 | 231.1 | $50,842.00 |
| Daniel N. Rosen | $350 | 10.1 | $3,535.00 |
| Douglas G. Wardlow | $200 | 7.4 | $1,480.00 |
| Barbara M. Livick (Paralegal) | $125 | 411.1 | $51,387.50 |
| Legal Assistants | $95 | 33.7 | $3,201.50 |
| *Total Fees for Attorneys/Staff* | | | **$469,516.00** |

The billing rates referred to above are greater than those shown on **Ex. 1**, Mr. Hixon's original Fee Agreement, prepared in June 2005. Our billing rates have increased twice during the more than two years since we first agreed to represent Mr. Hixon, once when we created Parker Rosen in November 2005, and again in January 2007.

21.     With regard to contingent fee files that I have handled since 1988, my effective hourly rate on collected fees for contingent fee work has been significantly greater than my normal hourly billing rates. My best estimation is that rate would easily be 40% to 50% greater, on average, than the normal hourly billed rates due in large part to the significant risk and cost associated with contingency cases.

22.     This matter required a significant amount of time and labor for a number of reasons. It is my belief that it required a relatively high degree of skill to perform the legal services for the Plaintiff properly and in a manner which secured this result.

23.     Before litigation commenced, we undertook significant informal discovery, including numerous requests for information under the Minnesota Government Data Practices Act. We worked with Plaintiff to prepare and file Charges with the Minnesota Department of Human Rights ("DHR"), as well as rebuttals to the Defendants' responses thereto. After the Defendants declined to participate in DHR mediation, we were forced to undertake formal litigation.

24.     We prepared a lengthy Complaint and worked on initial Rule 26 disclosures before undertaking formal discovery. Discovery in this case was burdensome. We were forced to take no fewer than 15 depositions, and engage in extensive investigation merely to flush out the basic facts of Mr. Hixon's arrest and detention. The discovery process was obstructed by Defendants, necessitating a formal Motion to Compel Discovery as well as an informal discovery conference with the Court. We spent dozens more hours briefing and arguing its Motion to Amend Pleadings to Assert Punitive Damages, and responding to Defendants' extensive papers in support of its Motion for Summary Judgment. We spent weeks preparing for the trial itself, including drafting numerous pretrial motions and memoranda. This preparation necessitated numerous lengthy consultations with witnesses and experts regarding police use of force and Mr. Hixon's damages.

25.     Police misconduct cases are very difficult for a number of reasons. First, and perhaps foremost, there is a reluctance on the part of jurors to believe police misconduct exists and therefore a corresponding bias toward believing the Defendant police officers and

other police witnesses. Secondly, the police control the documentary reporting of such incidents. They have almost exclusive control of evidence collection and responsibility for the corresponding failure to collect critical evidence. Certainly, this Court is keenly aware of and has observed jurors' pro-police bias in action in numerous jury trials.

26.     It is my belief that the hourly fees stated above are reasonable. The matters and amounts in controversy in this action were significant, not only in the context of this case, but also in the broader context of the assurance of the guarantees of civil rights provided by our Constitution. The results obtained were, by any standard, noteworthy. This is a case in which the defense made no Rule 68 offer, and indeed declined to even participate in mediation offered by the Minnesota Department of Human Rights, after Mr. Hixon filed a Charge with the Department. The jury's total verdict of $778,000 represents a significant result in Plaintiff's favor, and the $450,000 in punitive damages awarded is to my knowledge the larges punitive damages award ever in Minnesota in a police misconduct case.

27.     The services rendered and the time it took to render such services as stated on **Exs. 3, 4, and 5** were reasonable and necessary to the provision of legal services to Aljuan C. Hixon in order to ultimately and fully prevail on the claims against Defendants Mario Hernandez and the City of Golden Valley. All of the time entries and efforts described in **Exs. 3, 4, and 5** were directed ultimately toward that goal and were reasonable and necessary to achieve that goal.

28.    Attached hereto as **Ex. 6** is a true and correct copy of a list of Plaintiff's litigation costs. I have reviewed the Affidavit of Barbara M. Livick and **Ex. 6**, as well as the actual invoices and receipts supporting **Ex. 6**. **Ex. 6** accurately reflects the actual costs incurred in connection with the services performed for Plaintiff Aljuan C. Hixon in this Section 1983 action.

29.    Attached as **Ex. 7** is a true and correct copy of Judge Tunheim's Memorandum Opinion and Order on Motion for Attorneys' Fees and Costs in the case of Deborah K. King v. Dickey Joe Turner, Civil No. 05-388 (JRT/FLN).

30.    Attached as **Ex. 8** is a true and correct copy of Judge Montgomery's Order awarding attorneys' fees in the case of Benjamin D. Meir v. Jeffrey McCormick et al, Civil No. 06-190 (ADM/JSM).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Andrew D. Parker

Subscribed and sworn to before me
this 9th day of October, 2007.

Notary Public



BRENDA J. HANSON
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010

11